■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

CARL CAMPBELL, Also Known as BUTCH CAMPBELL, Appellant. —Judgment unanimously affirmed. Memorandum: The joint trial of defendant and his codefendant before two separate juries was proper (see, People v Ahalt, 170 AD2d 982 [decided herewith]).

Defendant objected to the submission to the jury of the verdict sheet on the ground that it included written instructions for the jury. The only instructions for the jury contained in the verdict sheet were the instructions under each count of intentional murder and its lesser included offense of manslaughter, first degree, that "Under this count you may find the defendant guilty of only one crime; you may find defendant not guilty of both crimes", the instruction under the intentional murder counts that "If not guilty because * * * intent is negatived by intoxication, consider manslaughter in the second degree", and the further instruction under the arson counts that "If intent is negatived by intoxication, the defendant must be found not guilty." Those procedural instructions are not a recitation of elements of the crime and are not proscribed by statute or case law. On appeal, defendant, citing People v Nimmons (72 NY2d 830) and People v Taylor (76 NY2d 873), argues that the verdict sheet also contains elements of the crime. By not objecting during the trial on that ground, defendant has not preserved the issue for our review and we decline to review it in the interest of justice.

Moreover, the facts of this case are critically different from those in People v Nimmons (supra). There, the trial court submitted to the jury a verdict sheet listing the counts of the indictment and the possible verdicts and separately submitted a sheet entitled "Elements of Various Crimes". That sheet contained a listing of each count of the indictment together with the elements of each in statutory language. The second sheet clearly violated the court's previous holdings that the court may not, without the consent of the parties, submit part of its charge to the jury and may not, without such consent, submit the text of a statute (see, CPL 310.30; People v Sanders, 70 NY2d 837; People v Brooks, 70 NY2d 896; People v Owens, 69 NY2d 585; all cited in People v Nimmons, supra). In Nimmons, it was not necessary to mention in the verdict sheet any of the statutory elements of the crime because, unlike the facts in this case, there were no multiple counts of the same crime involving the same victims. Thus, the jury was able to distinguish each count without referring to the distinguishing elements of the crimes. In this case, defendant was charged

with five counts of murder in intentionally causing the death of the victims and six counts of murder in causing the death of the victims in the furtherance of or during the course of robberies and a rape. Without reciting in the verdict sheets the distinguishing characteristics of each count, it would be impossible for the jury to distinguish between the two separate crimes of murder in the second degree.

*People v Taylor* (76 NY2d 873, *supra)* is also distinguishable from this case. There, the court held that, unless the parties consent, it is error to submit verdict sheets that, in addition to listing all of the charged crimes and the possible verdicts, also list some or all of the crimes' statutory elements. The court reasoned that "[s]ince such an error creates a risk that the jury's deliberative process will be unfairly skewed it puts in serious question the reliability of the ultimate guilt determination *(see, People v Owens,* 69 NY2d 585, 590-591)". *(Supra,* at 874.) *People v Owens (supra)* indicates how the jury's deliberative process may be unfairly skewed by the submission to the jury of written elements of the crime. There, in the absence of defendant's consent, the trial court submitted to the jury, in writing, portions of its charge. The Court of Appeals held that submission in writing of a part of a charge creates a risk that the jury, particularly in the absence of any requests for further instructions, will perceive the writing as embodying the more important instructions, inviting greater attention to the principles that are repeated in writing than to those simply recited orally. The fact that the trial court selected certain portions of the charge may itself convey the message that these are of particular importance. The very repetition of parts of the charge may serve to emphasize them and subordinate the others. The written instructions may be reinforced by their physical presence in the jury room, as oral instructions fade from memory.

Here, however, under the particular wording contained in the verdict sheet, there was no danger that the jury's deliberative process might be unfairly skewed. The language in the verdict sheet used to distinguish the two different crimes of murder in the second degree stated: "The defendant *is charged* with intentionally causing the death of [name of victim]" and "the defendant *is charged* with committing or attempting to commit robbery and in the course of such crime or of immediate flight therefrom, causing the death of [name of victim]" (emphasis added). Thus, the verdict sheet in no way indicated that the court was restating part of its charge or instructing the jury concerning the elements of the crime.

The language, "The defendant is charged with", was followed by the wording of the charges contained in the indictments. From that language, the jury could only infer that the verdict sheet referred to the charges made by the Grand Jury and thus the jury could not perceive that, by putting the charges in writing, the court was placing more emphasis on one part of its jury instructions than the others.

Here, unlike in *People v Owens (supra)*, the verdict sheet did not emphasize the elements of the crime favorable to the prosecutor and omit a defense favorable to defendant. In *Owens*, the defendant was relying upon the defense of agency, which was not mentioned on the verdict sheet. Here, defendant's trial strategy did not depend upon the elements of the crime or upon any defense established by case law or statute. Defendant's contention, emphasized in his closing statement, was simply that his codefendant, and not he, committed the crimes. The language of the verdict sheet could not have confused the jury concerning that simple factual issue. In fact, as the verdict indicates, the jury was not confused because it acquitted defendant of the murder counts relating to one of the victims.

In *Taylor (supra)*, as well as in *Nimmons (supra)*, there was no necessity for the court to include in the verdict sheet language in addition to the titles of the crimes. Here, however, in order to make the verdict sheet useful to the jury, the court had to add additional language to distinguish the two separate crimes of murder in the second degree, which contained different elements. It chose to do so by referring to what defendant was "charged with" using the language of the indictment. That was similar to the submission to the jury of parts of the indictment that occurred in *People v Moore* (71 NY2d 684). There, a majority of the Court of Appeals held that the submission did not entail any of the risks identified in *Owens (supra)* and that manifestly the court was not "conveying a message to the jury that [certain counts] were of particular importance and other matters less so." *(Supra,* at 687.) Moreover, and most significant here, the Court of Appeals stated that "[t]he counts did not purport to be a statement of the law" *(People v Moore, supra,* at 688). Here, too, the language in the verdict sheet did not purport to be a statement of the law.

Not only was there no danger that the jury's deliberative process would be skewed, but defendant can point to no prejudice suffered by him as a result of the submission of the verdict sheet. The jury was not led by the verdict sheet to

minimize the importance of any defense relied upon by defendant and, obviously, it did not rely upon the verdict sheet as a substitute for the court's instructions. In fact, after it was given the verdict sheet, the jury requested of the court, and was given, supplemental instructions on the definitions of reasonable doubt, accessorial conduct, and arson.

Defendant contends that the court erred in refusing to grant a mistrial because, during the trial, his codefendant, in the presence of the jury, attempted to attack him. We see no basis for a mistrial. Defendant has failed to show how his codefendant's action prejudiced him.

We have reviewed the other issues raised by defendant and we find them to be without merit. (Appeal from Judgment of Supreme Court, Monroe County, Mark, J.—Murder, 2nd Degree.) Present—Doerr, J. P., Boomer, Green, Pine and Davis, JJ.