■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID SOTOMAYER, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County (Bourgeois, J.), rendered February 27, 1987, convicting him of murder in the second degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.

The trial court committed reversible error when, over the objection of both the defendant and the prosecution, it submitted the following "verdict sheet" to the jury:

"VERDICT SHEET

"PEOPLE V DAVID SOTOMAYER        IND. NO. 5673/85

| "COUNT 1 | NOT GUILTY | GUILTY |
|---|---|---|
| "MURDER IN THE SECOND DEGREE | _____ | _____ |

(intentional murder)

"—If you find the defendant GUILTY of murder in the second degree (intentional murder), do not consider any lesser included offense under this count of the indictment, but go directly to consideration of Count 2 of the indictment.

"—If you find the defendant NOT GUILTY of murder in the second degree (intentional murder) because the People, despite having proven all elements of the crime, have failed to disprove justification, then you will also return NOT GUILTY verdicts as to all lesser included offenses under this count of the indictment.

"—If you find the defendant NOT GUILTY of murder in the second degree (intentional murder) because the People have failed to prove the elements of the crime, you will, without considering the issue of justification with regard to the crime, turn your consideration to the lesser included offense of manslaughter in the first degree.

"MANSLAUGHTER IN THE FIRST DEGREE      _____    _____

"—If your find the defendant GUILTY of manslaughter in the first degree, do not consider any further lesser included offense under this count of the indictment.

"—If you find the defendant NOT GUILTY of manslaughter in the first degree because the People, despite having proven all of the elements of the crime, have failed to disprove justification, then you will also return a NOT GUILTY verdict as to any further lesser included offense under this count of the indictment.

"—If you find the defendant NOT GUILTY of manslaughter in

the first degree because the People have failed to prove the elements of the crime, you will, without considering the issue of justification as to such crime, turn your consideration to the lesser included offense of manslaughter in the second degree.

"MANSLAUGHTER IN THE SECOND DEGREE _____ _____

"COUNT 2

"MURDER IN THE SECOND DEGREE

(felony murder)". _____ _____

For the following reasons, it must be concluded that the submission of this verdict sheet constituted error, that this error has been preserved for appellate review as a matter of law, and that application of the harmless error doctrine is precluded, so that the presence of this error requires reversal.

Pursuant to the terms of the Criminal Procedure Law, a deliberating jury may be provided with trial exhibits (see, CPL 310.20 [1]) or with "[a] written list prepared by the court containing the offenses submitted * * * and the possible verdicts thereon" (CPL 310.20 [2]). A deliberating jury may also be provided with the "text of any statute" (CPL 310.30), provided that the defendant consents. In a series of cases, the Court of Appeals has held that the error committed when a trial court allows a deliberating jury to review written documents not specifically encompassed by these statutes (see, CPL 310.20, 310.30) can never be considered harmless, irrespective of the quantity of the evidence (see, People v Taylor, 76 NY2d 873; People v Nimmons, 72 NY2d 830; People v Sanders, 70 NY2d 837; People v Brooks, 70 NY2d 896; People v Owens, 69 NY2d 585; cf., People v Moore, 71 NY2d 684). The only exception to this rule is reflected in People v Moore (supra), where it was held to be harmless error for a trial court to submit a portion of the indictment to the jury in response to a specific request (cf., People v Durant, 153 AD2d 757).

In the few years since the Court of Appeals announced a rule of automatic reversal in People v Nimmons (supra) and its immediate predecessors, this court has been compelled to overturn at least 15 convictions (see, People v Hedge, 162 AD2d 467; People v Rodriguez, 159 AD2d 736; People v Livingston, 157 AD2d 859; People v Bollander, 156 AD2d 456; People v Taylor, 154 AD2d 634, affd 76 NY2d 873, supra; People v Durant, 153 AD2d 757, supra; People v Ashlay, 152 AD2d 675; People v Alexander, 152 AD2d 587; People v Pugh, 150 AD2d

734; *People v Crosby,* 150 AD2d 478; *People v King,* 150 AD2d 497; *People v Conners,* 149 AD2d 722; *People v Jackson,* 148 AD2d 750; *People v Gillispie,* 144 AD2d 482; *People v Valle,* 143 AD2d 160). The First Department has also deemed it to be "well established that a violation of this rule * * * requires reversal irrespective of prejudice" *(People v Ocasio,* 161 AD2d 526; *see also, People v Pridgen,* 159 AD2d 330). But for the rule of "automatic reversal" announced in cases such as *Nimmons (supra), Sanders (supra),* and *Owens (supra),* many of these convictions would certainly have been affirmed on the basis of the harmless error doctrine.

We cannot conclude, as do our dissenting colleagues, that the harmless error doctrine which was ruled inapplicable by the Court of Appeals in cases such as *Nimmons (supra)* may nevertheless be applied here. This argument rests on the premise that certain violations of CPL 310.20 *may* be considered harmless, while other violations of CPL 310.20 (e.g., those under review by the Court of Appeals in *Nimmons [supra], Sanders [supra], Brooks [supra],* and *Owens, [supra])* may *not* be considered harmless. This premise is itself of dubious validity, since the Court of Appeals has recognized only one, narrow exception to the rule of automatic reversal announced in cases such as *Nimmons (supra),* and this exception *(see, People v Moore,* 71 NY2d 684, *supra)* is clearly inapplicable here. On the contrary, the Court of Appeals, in *Nimmons (supra), Sanders (supra),* and *Brooks (supra),* has consistently adhered to its earlier declaration in *People v Owens* that "the distribution of written instructions to the jury is not expressly authorized by law, and the error in such submissions *cannot be deemed harmless" (People v Owens,* 69 NY2d 585, 591-592, *supra* [emphasis supplied]).

The document submitted to the jury in the present case indubitably contained "written instructions", the submission of which was, in the language of the Court of Appeals, "not expressly authorized by law" *(People v Owens, supra,* at 591-592). The Court of Appeals has unequivocally ruled that the error inherent in the submission of such a document "cannot be deemed harmless" *(People v Owens, supra,* at 592). We are thus bound to apply the holding of the Court of Appeals to the facts of this case.

Our dissenting colleagues rely on *People v Melendez* (160 AD2d 739) in order to support the view that some violations of CPL 310.20 may be considered harmless. We do not consider *Melendez* to be controlling. The document submitted by the trial court in *Melendez* was, in the words of this court, a

"neutral 'list' of exhibits" *(People v Melendez, supra,* at 740). There is an obvious distinction which can be drawn between a list of exhibits, on the one hand, and "written instructions", on the other. The present case clearly involves the latter type of verdict sheet, and we are compelled to respect the unequivocal language of the Court of Appeals in the *Owens* case *(supra),* and to conclude that this error, unlike the error in the *Melendez* case, cannot be considered harmless.

It must also be emphasized that the "written instructions" given to the jury in this case were not entirely "neutral" *(cf., People v Melendez, supra).* The text of the verdict sheet mentions only one defense: justification. Any juror who might have employed this verdict sheet as his sole, or even as his principal source of guidance during deliberations might well have concluded that the defendant's other defenses *(e.g.,* intoxication) were invalid or unworthy of consideration. The *potential* for prejudice is thus clear, even if its likelihood is not. It must be remembered that the rule of automatic reversal has been applied even in cases where nothing more innocuous than the text of the relevant statute was given to the jury without the defendant's consent *(see,* CPL 310.30; *People v Sanders,* 70 NY2d 837, *supra; People v Owens,* 69 NY2d 585, *supra).* In the present case, the verdict sheet mentioned one defense to the exclusion of others, and actually instructed the jurors on how to proceed from one count to the next—a process that is often critical in a jury's resolution of a case *(see generally, People v Boettcher,* 69 NY2d 174).

Thus, even if we were to accept the view, propounded by our dissenting colleagues, that certain CPL 310.20 violations may, consistent with Court of Appeals precedent, be treated as "harmless", we would nevertheless consider the present case to be ill-suited to that sort of harmless error analysis. The verdict sheet used in this case was, in fact, potentially if not actually prejudicial. To say that the submission of this *potentially* prejudicial verdict sheet may be viewed as harmless, because there is little probability that it was *actually* prejudicial, would be to apply the harmless error doctrine in an area where the Court of Appeals has precluded its application. This we are not free to do.

We are aware that the Fourth Department has recently reached a contrary result *(see, People v Campbell,* 170 AD2d 982). For the reasons outlined above, we decline to follow that decision.

We have reviewed the defendant's remaining contentions and find them to be without merit.

The judgment appealed from is reversed, on the law, and a new trial is ordered. Bracken, Harwood and Balletta, JJ., concur.

Sullivan, J., dissents, and votes to affirm the judgment appealed from, with the following memorandum in which Thompson, J. P., concurs. The majority concludes that reversal is mandated by the trial court's submission to the jury, over the objections of both the defense and the prosecution, of a verdict sheet setting forth not only the counts submitted but also the methodical steps by which the jury should proceed in considering those counts. I disagree.

It is true that the trial court's submission of the challenged instructions was not expressly authorized by statute (see, CPL 310.20 [2]). However, the neutral content and character of those written procedural directions posed no risk of depriving the defendant of a fair trial, and any error in their submission must be deemed harmless under the circumstances of this case. The defendant relies upon a line of cases from the Court of Appeals, commencing with the decision in *People v Owens* (69 NY2d 585), in support of his argument for reversal. Such reliance is misplaced. In *People v Owens (supra)* and the companion case of *People v Boon* (69 NY2d 585), the trial courts had submitted portions of the oral charges in writing to the jurors. These writings set forth the definitional elements of the charged offenses and of certain legal concepts involved. In reversing the resulting judgments of conviction, the Court of Appeals explained its reasoning in the following manner:

*"[The] submission of only a portion of a charge—particularly in the absence of any request from the jury for further instruction—creates a risk that the jury will perceive the writing as embodying the more important instructions, inviting greater attention to the principles that are repeated in writing than those simply recited orally (see, People v Townsend,* 67 NY2d 815, 817). Such a risk flows from at least three sources. First, the fact that the trial court has selected certain portions of its charge may itself convey the message that these are of particular importance. Second, the very repetition of parts of the charge may serve to emphasize them and subordinate the others. Finally, the written instructions may be reinforced by their physical presence in the jury room, as the oral instructions fade from memory. We can see no legitimate basis for distributing only parts of a charge over defendant's objection —especially where the parts that are excluded are those that might be considered favorable to the defense—and therefore conclude that it is error to do so.

"In both *Owens* and *Boon,* the document handed to the jury contained only isolated portions of the oral charge. *In Owens, the court elected to submit only the elements of the crimes charged and relevant statutory definitions, but no reference to the agency defense. In Boon, the writing similarly set forth the elements of the crimes and relevant definitions, but not the portions of the charge pertaining to the presumption of innocence or reasonable doubt. Thus, in both cases, the submission created the potential for prejudice by inviting the jury to place undue emphasis on those matters contained in the written submission, subordinating those portions of the charge—favorable to the defense—contained in the oral charge, and error was committed.*

*"Having deprived each of the defendants of a fair trial, such error cannot be considered harmless (People v Crimmins,* 36 NY2d 230, 238; *see, People v Vincenty,* 68 NY2d 899; *People v Townsend,* 67 NY2d 815, 817, *supra)" (People v Owens, supra,* at 591 [emphasis supplied]).

The same analysis was employed by the Court of Appeals in *People v Sanders* (70 NY2d 837 [submission of the text of a pertinent statute to the jury without the defendant's consent]), *People v Brooks* (70 NY2d 896 [submission of an abbreviated written version of the court's oral charge, including certain principles of the justification defense]), and *People v Nimmons* (72 NY2d 830 [submission of a writing listing the counts and defining in statutory language the elements of each offense]). In each case, the Court of Appeals recognized that the submission of a written portion of the charge setting forth only some of the relevant legal principles or definitions *created a substantial risk of depriving the accused of a fair trial,* either by focusing the jury's attention on certain legal concepts to the exclusion of others, or by emphasizing the prosecution's case at the expense of the defendant's. We have followed this approach when confronted with parallel circumstances *(see, e.g., People v Bollander,* 156 AD2d 456; *People v Ashlay,* 152 AD2d 675; *People v Crosby,* 150 AD2d 478). However, each of these cases involved a verdict sheet which could improperly influence the jury in making a substantive determination as to the guilt or innocence of the defendant.

Contrary to the defendant's present claim, the concerns for an accused's right to a fair trial which formed the basis for the foregoing decisions are not implicated by the use of the verdict sheet in this case. Indeed, the language contained in the instant verdict sheet does not refer to any of the evidence adduced at trial, the contentions of the parties, or the substan-

tive legal definitions and principles relevant to this case. In no way can it be misused to influence the jury regarding the ultimate question of whether the defendant is guilty or not guilty. Rather, it merely constitutes an accurate and neutral "road map" directing the jurors as to the mechanics of how to proceed in their consideration of the various counts after they have independently determined the defendant's guilt or innocence with respect to a specific count. In this regard, it must be noted that the Appellate Division, Fourth Department, recently employed a similar analysis in its decision in *People v Campbell* (170 AD2d 982). In that case, the defendant contended on appeal, *inter alia,* that the trial court had committed reversible error in submitting a verdict sheet to the jury which contained certain neutral instructions. The Fourth Department rejected the contention, reasoning that "[such] procedural instructions are not a recitation of elements of the crime and are not proscribed by statute or case law." *(People v Campbell, supra,* at 983). Inasmuch as this language is equally applicable to the case before us, it constitutes persuasive authority for the rejection of the defendant's present claim.

The defendant's contention, echoed by the majority, that the challenged instructions are prejudicial because they refer to the defense of justification, but do not contain any similar reference to the defendant's claim of intoxication, is unpersuasive. Intoxication is not a defense to a criminal charge, but may be proffered to negate an element (e.g., specific intent) of the offense *(see,* Penal Law § 15.25). Accordingly, had the jury accepted the defendant's claim of intoxication in this case, it would be required to find, pursuant to the court's written instructions, that the necessary elements of the specific intent crimes had not been established beyond a reasonable doubt. Inasmuch as no distinct analytical step was required in the jury's consideration of the intoxication claim, no mention of the claim in the court's procedural instructions was necessary. Conversely, the defense of justification only comes into play once the jurors determine that the requisite elements of the charged offense have been established. The jury must then engage in the additional analytical step of determining whether the prosecution has satisfied its burden of disproving this defense beyond a reasonable doubt. Accordingly, the reference to justification in the court's instructions merely constituted a recognition of this additional step. Significantly, the instructions did not define justification or set forth any legal principles related to this defense. They merely directed the jury as to the appropriate order in which the justification

defense should be considered. As such, the written instructions submitted herein did not bear on the substantive issue of the defendant's guilt or innocence, and there is simply no danger that the verdict sheet "create[d] a risk that the jury [would] perceive the writing as embodying the more important instructions, inviting greater attention to the principles that are repeated in writing than those simply recited orally" *(People v Owens,* 69 NY2d 585, 591, *supra). Indeed, the verdict sheet in this case posed even less risk of prejudice than that involved in People v Melendez* (160 AD2d 739), where we held that: "[T]he 'parenthetical references to the facts' in the case at bar did not emphasize one principle of law or factual scenario at the expense of others *(see, People v Nimmons,* 72 NY2d 830; *People v Owens,* 69 NY2d 585; *People v Alexander,* 152 AD2d 587). Rather, they constituted a neutral 'list' of exhibits, designed to assist the jury in its deliberations *(cf.,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 310.20, at 653; *see also, People v Ribowsky,* 156 AD2d 726)" *(People v Melendez, supra,* at 740).

Similarly unavailing is the defendant's claim, accepted by the majority, that *any* submission of an unauthorized writing to the jury constitutes reversible error to which the doctrine of harmless error cannot be applied. In *People v Owens (supra),* the Court of Appeals expressly found that the submission to the jury of written portions of the charge *deprived each defendant of a fair trial* and therefore could not be considered harmless. The court expressly relied upon its prior decision in *People v Crimmins* (36 NY2d 230) in support of this proposition. In turn, *People v Crimmins (supra)* provides: "[n]ot only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. *So, if in any instance, an appellate court concludes that there has been such error * * * as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction.* The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" *(People v Crimmins, supra,* at 238 [emphasis supplied]).

Hence, where the court's submission of an unauthorized writing to the jury *deprives the accused of a fair trial,* reversal

is required without regard to the quantity and quality of the evidence of guilt *(see, e.g., People v Nimmons,* 72 NY2d 830, *supra; People v Brooks,* 70 NY2d 896, *supra; People v Owens,* 69 NY2d 585, *supra; People v Vincenty,* 68 NY2d 899; *People v Townsend,* 67 NY2d 815). However, where, as in the present case, the submission of the unauthorized writing does not deprive the defendant of his fundamental right to a fair trial, the harmless error doctrine may be applied *(see, e.g., People v Moore,* 71 NY2d 684 [court's submission of a portion of the indictment at the request of the jury deemed harmless error]). Inasmuch as the procedural instructions submitted in this case certainly posed no greater risk of prejudice than the accusatory language of the indictment supplied to the jury in *People v Moore (supra),* any error herein may properly be subjected to harmless error analysis. Upon consideration of the credible and overwhelming testimonial and forensic evidence of the defendant's guilt and the virtually nonexistent potential for prejudice created by the court's submission of the challenged verdict sheet, I conclude that the error in this case is harmless *(see, People v Crimmins,* 36 NY2d 230, *supra; see, e.g., People v Moore, supra).* Accordingly, the defendant's remaining contentions being either not properly preserved for appellate review or without merit, I would affirm the judgment of conviction.