OPINION OF THE COURT
Gerard M. Weisberg, J.
In the early morning hours of September 16, 1978, someone shot and killed Dutch Reid atop the stoop at 2080 Nostrand Avenue in Brooklyn, New York. Claimant was indicted for *333 murder and illegal possession of a dangerous weapon with respect to this homicide.
The first trial ended in a mistrial when the jury was unable to agree on a verdict. Claimant’s second trial was held in November 1979 and he was found guilty of murder in the second degree and criminal possession of a dangerous weapon in the second degree.
In 1981, the Appellate Division, Second Department, reversed and remitted for a new trial. The five sentence memorandum decision provided in pertinent part: "The court’s instruction to the jury that they could consider testimony of an earlier gun possession for the purpose of establishing identity and intent was error. (See People v Molineux, 168 NY 264.)” (People v Rivers, 85 AD2d 674.) What the basis for the reversal of the gun possession count was is not specifically indicated.
After another mistrial, claimant was retried in 1983. He was again convicted and the conviction was once again overturned. (People v Rivers, 109 AD2d 758.) Finally, on July 17, 1986, claimant was retried and acquitted on all counts. This claim seeking damages for unjust conviction and imprisonment under Court of Claims Act § 8-b ensued.
Prior to the trial before us, claimant moved in limine for an order prohibiting the introduction at trial of certain testimony which had been adduced during the trial which had resulted in his first conviction. Specifically, claimant sought to preclude the testimony of Wayne Jarréis[1] to the effect that approximately three hours prior to the killing he had observed claimant brandishing a handgun.[2]
Although we agreed with claimant that based on the Appellate Division memorandum reversing his first conviction, that the evidence would be inadmissible to prove his guilt or lack of innocence with respect to the murder charge,[3] we also held that it was admissible with respect to the issue of claimant’s *334 freedom from contributing to his own conviction. (Rivers v State of New York, NYLJ, Dec. 24, 1990, at 26, col 3.)
Interestingly, at that time, we anticipated that claimant would deny having possessed a gun. We spoke too soon. At the trial before us, claimant’s testimony was essentially that he was acquainted with Dutch Reid from their both residing on the same street; that two neighborhood teenagers told him that someone had shot Reid in front of the latter’s apartment house; that claimant then went to the murder scene and found Reid lying there shot; and that he administered CPR to Reid until the police came who, thereafter, arrested him for the murder based on the accusations of two other neighborhood teenagers. Significantly, at no point did claimant deny possessing an illegal gun before or at the time of the killing.
In order to obtain a judgment in his favor under Court of Claims Act § 8-b, a claimant must prove by clear and convincing evidence that: "(ii) his judgment of conviction was reversed or vacated, and the accusatory instrument dismissed or, if a new trial was ordered, either he was found not guilty at the new trial or he was not retried and the accusatory instrument dismissed” provided that the reversal and dismissal were under one of several enumerated statutes. (Court of Claims Act § 8-b [5] [b] [ii].) While this clause can be read as requiring that the reversal have been under one of the statutes listed therein even after an acquittal on retrial, case law has held to the contrary. (See, Ferrer v State of New York, 136 Misc 2d 218, affd on opn below 136 AD2d 487.) Claimant has therefore satisfied this element of the statute.
The balance of section 8-b (5) requires a claimant prove that: "(c) he did not commit any of the acts charged in the accusatory instrument or his acts or omissions charged in the accusatory instrument did not constitute a felony or misdemeanor against the state; and (d) he did not by his own conduct cause or bring about his conviction.” (Emphasis added.)
With respect to paragraph (c), we first note that claimant failed to introduce the indictment or indictments under which he was prosecuted and convicted. We fail to see how he, in accordance with his statutory burden of proof, can hope to prove he did not commit the acts charged therein without proving what they were. That his criminal record was sealed upon his acquittal is no excuse. Since it was sealed for his benefit, it is available to him. (CPL 160.50.)
*335 In addition, although not raised by the parties, has claimant satisfied section 8-b (5) (c) in the absence of a denial or other evidence that he did not possess an illegal gun on or about September 16, 1978? We have not been directed to, nor has our research disclosed, any cases in this jurisdiction which have confronted this situation. In other words, where a claimant contests or proves his innocence with respect to some but not all of the counts charged in the accusatory instrument has a cause of action under section 8-b been established?
The legislative history of section 8-b in general reveals that it was based in large part on the Federal unjust conviction and imprisonment statute, 28 USC § 2513. (See, 1984 Report of NY Law Rev Commn, 1984 McKinney’s Session Laws of NY, at 2919-2920 [Report].) Moreover, section 8-b (5) (c) was taken almost verbatim from the Federal statute. (Cf., 28 USC § 2513 [a] ["Any person suing * * * must * * * prove that: * * * (2) He did not commit any of the acts charged”.]) The Federal provision has been interpreted as follows: " '¡T]he claimant must be innocent of the particular charge and of any other crime or offense that any of his acts might constitute. The claimant cannot be one whose innocence is based on technical or procedural grounds, such as lack of sufficient evidence, or a faulty indictment — such cases as where the indictment may fail on the original count but claimant may yet be guilty of another or minor offense.’ ” (Osborn v United States, 322 F2d 835, 840, quoting HR Rep No. 2299, 75th Cong 3d Sess 2; see also, Sinclair v United States, 109 F Supp 529, cert denied 345 US 974; United States v Keegan, 71 F Supp 623; Hadley v United States, 66 F Supp 140, cert denied 329 US 815.)
Here, based on the first conviction and reversal alone, we know that claimant must have been charged with illegal possession of a gun on or about September 16, 1978. The reversal was apparently based on a failure of proof, the only evidence, Jarréis’ testimony, being too far removed in time to be legally probative. But the fact that the evidence of gun possession may have been legally insufficient does not change the fact that claimant was charged with gun possession; that gun possession is a crime; and that claimant has not even denied possessing a gun on or about that date. He has therefore failed to sustain his burden of proof under section 8-b.
Alternatively, as indicated above, section 8-b (5) (d) requires a claimant to prove that he did not cause or bring about his own conviction. Here, claimant’s conviction was caused, in *336 part, by the jury’s having heard Jarréis’ testimony that claimant had a gun some three hours before the murder, testimony which claimant has not disputed or denied. It would thus appear that his own illegal conduct contributed to his conviction. In response, claimant notes that in the Report, there are five examples of misconduct that would disqualify a claimant from relief. These are giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony or concealing the guilt of another. (See, Report, op. cit., at 2932.) Claimant points out that his conduct is not among the five.
We have, however, held the list to be illustrative and not exhaustive and have ruled other and different conduct to have violated section 8-b (5) (d). (See, e.g., Vann v State of New York, NYLJ, Apr. 30, 1990, at 28, col 3 [sharing robbery proceeds].)
Claimant next argues that since all five involved postcrime activities, the legislative intent behind section 8-b (5) (d) must have been to discourage claimants from "corrupting the trial or investigative process.” Precrime activities, claimant concludes, are not the type of conduct intended to bar relief under the statute.
While avoiding corruption of justice was certainly a legislative goal, it was not the only purpose of section 8-b (5) (d). Again, reference to the Federal statute is instructive. The history of the latter reveals that the same five examples present in the New York Report were listed as examples of misconduct that would disqualify a Federal claimant under the Federal statute. (See, United States v Keegan, 71 F Supp 623, supra.) Yet conduct differing from those examples, and committed before the crime of which the claimant was convicted, have been held by the Federal courts to disqualify claimants from relief. (See, e.g., McMurry v United States, 15 MJ 1054 [allowing roommate to hide drugs in room contributed to conviction for possession].) Following this precedent, we have done the same. (See, Alexandre v State of New York, NYLJ, Mar. 31, 1989, at 24, col 1, affd on other grounds 168 AD2d 472, appeal dismissed 77 NY2d 925 [knowingly working with an illegal handgun within reach contributed to conviction for possession].)
The purpose of the provision is, as stated by the Federal courts, to carry " 'out simply the equitable maxim that no one shall profit by his own wrong or come into court with unclean *337 hands.’ ” (United States v Keegan, 71 F Supp 623, 628, supra.) But is it equitable, claimant argues, for the defendant to be rewarded for its own misconduct in having introduced the inadmissible Jarréis’ testimony? The answer is that the State is not being rewarded, it is just not being punished; while the claimant, whose hands are unclean, is being left where equity found him: uncompensated but free.
Thus, upon the dual grounds that claimant has failed to sustain his burden of proof that he did not commit any of the acts charged in the accusatory instrument and that he did not by his own conduct cause or bring about his conviction, the claim is dismissed.

. Actually, it was the transcript of that testimony which was being offered pursuant to CPLR 4517 apparently because Mr. Jarréis was then deceased.

. In the Assistant District Attorney’s offer of proof, it was represented that Mr. Jarréis would testify that claimant had, in addition to possessing the gun, shot at the witness several times. The trial court only allowed the testimony concerning the possession.

. While not raised by the parties, presumably the same ruling should obtain with respect to the testimony and the gun possession count.